CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 28, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Megan Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

**RONALD ANTHONY PERRY,** )
**Plaintiff,** ) **Case No. 7:23-cv-00372**
)
**v.** )
) **By: Michael F. Urbanski**
**ANDREW MCKINNEY,** ) **Senior United States District Judge**
**Defendant.** )

**MEMORANDUM OPINION**

Ronald Anthony Perry, an inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that his cell phone was seized and searched without a warrant in violation of the Fourth Amendment by an officer with the Pulaski County Sheriff's Office. After obtaining the name of the officer responsible for seizing his phone, Perry filed an amended complaint naming that officer, Andrew McKinney, as the sole defendant. The case is presently before the court on the parties' cross-motions for summary judgment. ECF Nos. 49 and 52. For the reasons set forth below, Perry's motion is **DENIED**, and McKinney's motion is **GRANTED**.

## I. Background

### A. Perry's Verified Complaints

According to Perry's verified complaints,[1] Perry was stabbed in the face, head, chest, and arm while in Pulaski County on the night of May 26, 2021. Compl., ECF No. 1, at 2. He

[1] A verified original or amended complaint is "the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (quoting Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991)).

was transported by ambulance to Carilion Medical Center. Id. While Perry was being treated in the emergency room, his jeans were removed and his cell phone was placed on a shelf. Id.

At some point thereafter, Perry was airlifted to Carilion Roanoke Memorial Hospital for surgery. Id. After he awoke from surgery, Investigator James Phillips questioned him at the hospital and informed him that the person responsible for the stabbing was not pursuing charges. Id. Phillips indicated that the case was being "handed over to the Commonwealth" and that the Commonwealth would decide whether to proceed with any charges arising from the incident. Id.

At some point after speaking with Phillips, Perry realized that he did not have his cell phone. Id. He checked the phone's GPS location, which showed that it was at the Pulaski County Sheriff's Office. Id. When Perry called the Sheriff's Office to find out why the phone had been taken without notifying him, Phillips informed him that the phone "would be access[ed] to see if there was evidence of the [stabbing] incident." 2d Am. Compl., ECF No. 29, at 2. Perry retrieved the phone approximately three weeks later after being told that he could pick it up. Id.

**B. McKinney's Evidence**

In response to Perry's motion for summary judgment and in support of his cross-motion, McKinney has submitted his own declaration, a declaration from Investigator Jason Phillips, and other exhibits. The exhibits include an incident report prepared by the Pulaski County Sheriff's Office in connection with an incident that occurred in Dublin, Virginia, on the night of May 26, 2021.

The evidence indicates that Pulaski County Sheriff's Deputy Andres Moreno responded to 5511 Dublin Drive at approximately 10:00 p.m. on May 26, 2021, in reference to a reported assault. Incident Report, ECF No. 53-1 at 1, 6. Upon his arrival, Moreno spoke to the male subject (hereinafter "victim") who had reported the assault. Id. at 6. The victim informed Moreno that he had been outside on his porch smoking a cigarette with his girlfriend when Ronald Perry, who lived in Schooler Hill, parked his vehicle and approached them with a black stick. Id. The victim reported that Perry's behavior appeared to be aggressive and that he instructed his girlfriend to go inside. Id. Perry continued to threaten the victim and demanded that the victim get in Perry's vehicle. Id. The victim told Perry that he would need to change out of his pajamas first and then went inside and locked the door. Id. The victim reported that Perry eventually broke into the home and demanded that the victim go outside. Id. Once they were outside, Perry reportedly began to attack the victim with a black stick, which the victim discovered had a "stun device" on one end. Id. After allegedly being attacked with the stick, the victim "went into 'survival mode'" and fought back. Id. The victim reported that he found a knife and "possibly stabbed [Perry] in the stomach area." Id. The victim advised that he did not want to pursue charges against Perry. Id.

While Moreno was still speaking with the victim, dispatch advised that there was a male subject at Schooler Hill bleeding. Id. at 7. Corporal C. Linkous then called Moreno to advise that the bleeding male subject was Perry, who had sustained several cuts and was being transported to the hospital. Id. Moreno then detained the victim and informed him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). Id.

Meanwhile, Defendant McKinney responded to an apartment complex at 6214 Schooler Hill Drive in reference to an Emergency Medical Services ("EMS") call. Id. at 13. Dispatch informed McKinney that a male individual had been cut with a knife after attempting to retrieve something that had been taken from the female caller's residence and that the call was related to the incident at 5511 Dublin Drive. Id. McKinney subsequently spoke to Perry in the front yard of the apartment complex. Id. McKinney observed that "Perry's face was bleeding heavily and the skin on his left cheek was hanging down." Id. Additionally, Perry had two deep cuts on the inside of his left arm, and he was bleeding from the back of his head. Id. Before being transported to the hospital by EMS, Perry mumbled something about his personal property and reported that he had been stabbed by the victim. Id.

After speaking to the female caller, who identified herself as Perry's fiancé, McKinney went to the hospital to follow up with Perry. Id. Perry reported that he had gone to the victim's house to retrieve his laptop and that he was going to give the victim a ride back to Perry's apartment to retrieve some power tools. Id. Perry also reported that he was upset after finding out that the power tools being stored at his apartment had been stolen from Wal-Mart. Id. Perry claimed that the victim had swung at him first after they walked outside the victim's residence and that he had fought back in self-defense. Id. at 14. Perry reported being stabbed on his arm, face, the back of his head, and in his chest area, and described the knife used to stab him as a "hunting style knife." Id.

The incident report indicates that "Perry's cell phone was retrieved from him at the hospital and turned over to Investigator Phillips," and that Perry was transported by helicopter to a hospital in Roanoke. Id. According to McKinney's declaration, the cell phone was

"covered in blood" and its screen was "busted." McKinney Decl. ¶ 5, ECF No. 150-1. McKinney also maintains that Corporal Linkous "directed [McKinney] to seize the cell phone due to suspicion that there was a text message exchange on it between [Perry] and a known drug dealer who had allegedly stabbed him." Id. ¶ 4. At some point, McKinney returned to the Pulaski County Sheriff's Office with the cell phone in an evidence bag and handed it directly to Investigator Phillips. Id. ¶ 6.

Investigator Phillips interviewed the victim at the Sheriff's Office, after which a search warrant was obtained for the victim's residence. Incident Report, ECF No. 53-1 at 9. During the interview, the victim admitted that the knife used to stab Perry had been placed in a tub inside the victim's bathroom following the altercation, and officers subsequently located the knife in the described location while searching the residence. Id. at 10–11. They also observed damage to a door that was consistent with the victim's story of the door being forced open by Perry. Id. at 11. Additionally, Phillips interviewed two women at the victim's residence. Id. "Based on the witness statements matching for the most part and the evidence at the scene appearing to [corroborate the victim's story]," no charges were pursued against the victim. Id. However, Corporal Linkous obtained a protective order for the victim against Perry. Id.

On May 27, 2021, Investigator Phillips met with Perry at Carilion Roanoke Memorial Hospital. Id. Phillips advised Perry that he would be submitting the case to the Commonwealth's Attorney and that it was possible that he would be charged as a result of the incident involving the victim. Id. at 12. According to the incident report, Perry indicated that he did not want to be charged himself or pursue charges against the victim. Id.

Investigator Phillips subsequently forwarded the case information to the Pulaski County Commonwealth's Attorney to review for potential charges. Id. The Commonwealth's Attorney ultimately "declined to prosecute." Id. at 8. Therefore, to Phillips's knowledge, Perry's cell phone was not searched by the Pulaski County Sheriff's Office. Phillips Decl. ¶¶ 3, 6, ECF No. 28. The phone was returned to Perry on June 24, 2021. Id. ¶ 6.

### C. Perry's Responses

Perry has filed several responses to McKinney's motion for summary judgment. See ECF Nos. 51, 55, 56, and 58. One of the responses is not signed, and none of them are signed under penalty of perjury. Consequently, they may not be considered evidence for purposes of summary judgment. See Roy v. Ivy, 53 F.4th 1338, 1348 (11th Cir. 2022) (concluding that the district court properly declined to consider unsworn inmate statements for purposes of summary judgment since they were not made under penalty of perjury in accordance with 28 U.S.C. § 1746); Poston v. Looney, No. 7:25-cv-00169, 2026 WL 1067405, at *2 n.1 (W.D. Va. Apr. 17, 2026) ("[B]ecause Poston's Response is unsworn and not given under penalty of perjury, it is insufficient to defeat summary judgment."); Goad v. Kinney, No. 7:24-cv-00309, 2025 WL 3284454, at *5 n.2 (W.D. Va. Nov. 25, 2025) ("Pro se pleadings are afforded liberal construction, but an unsworn response to a motion for summary judgment is not a substitute for the requirements of the Federal Rules of Civil Procedure that a plaintiff must respond to

the motion for summary judgment with admissible evidence and sworn affidavits or declaration[s]."[2]

## II. Standard of Review

Both parties have moved for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, the court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986)).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). In considering each motion, "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." Id. (internal quotation marks omitted). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of

[2] The court notes that Perry was notified of his right to oppose McKinney's motion for summary judgment pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). ECF No. 54. The Roseboro notice specifically advised Perry that he must set forth his "version of the facts with sufficient evidence" and that such evidence may include "notarized affidavits" or "declarations signed under penalty of perjury." Id.

law." Anderson, 477 U.S. at 251–52. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . consider the fact undisputed" for purposes of summary judgment or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## III. Discussion

Perry claims that his cell phone was unlawfully seized and searched in violation of the Fourth Amendment. "The Fourth Amendment, as incorporated through the Fourteenth Amendment, prohibits state actors from conducting 'unreasonable searches and seizures.'" Haze v. Harrison, 961 F.3d 654, 660 (4th Cir. 2020) (quoting U.S. Const. amend. IV). "As a general rule, warrantless searches or seizures are per se unreasonable." United States v. Williams, 592 F.3d 511, 521 (4th Cir. 2010). However, "there are 'a few specifically established and well-delineated exceptions'" Id. (quoting Mincey v. Arizona, 437 U.S. 385, 390 (1978)).

One such exception, on which McKinney relies, is the plain-view exception to the warrant requirement. Under this exception, a law enforcement officer may seize[3] an object without a warrant if "(1) the officer was lawfully in a place from which the object could be viewed; (2) the officer had a lawful right of access to the seized item; and (3) the incriminating character of the item was immediately apparent." United States v. Green, 106 F.4th 368, 377 (4th Cir. 2024) (internal quotation marks and brackets omitted). Based on McKinney's

[3] The plain-view exception only allows for the warrantless seizure of an item in certain circumstances. It is "not an exception to the warrant requirement for a Fourth Amendment search." United States v. Davis, 690 F.3d 226, 232 n.11 (4th Cir. 2012) (emphasis added).

evidence, which Perry has not properly disputed, the court concludes that the warrantless seizure of Perry's phone was justified under the plain-view exception.

With respect to the first two requirements, the record reflects that McKinney went to the emergency room to speak to Perry following the altercation and that Perry's cell phone was in plain view at that time. See Compl. at 2 (alleging that the cell phone "was placed on a shelf near [Perry] in the emergency room"). In similar circumstances, the United States Court of Appeals for the Fourth Circuit recognized that a police officer "lawfully fulfilling his duty to investigate a reported shooting . . . lawfully entered the emergency room to interview the victim of the shooting." United States v. Davis, 690 F.3d 226, 234 n.13 (4th Cir. 2012). The court also concluded that the officer had lawful access to a bag of clothing underneath the victim's gurney. Id. Therefore, as in Davis, the court concludes that the undisputed evidence establishes that McKinney was lawfully in a place in which the cell phone could be viewed and that McKinney had a lawful right of access to the cell phone.

To satisfy the third requirement of the plain-view exception, an officer must establish that the incriminating nature of the item seized was immediately apparent. Green, 106 F.4th at 377; United States v. Davis, 94 F.4th 310, 319 (4th Cir. 2024). The incriminating nature of an object is immediately apparent if, under the circumstances, an officer has probable cause to believe that the object contains or constitutes evidence of a crime. Davis, 94 F.4th at 319 (citing United States v. Babilonia, 854 F.3d 163, 180 (2d Cir. 2017)). An item "need not itself be contraband" to satisfy this requirement. Davis, 690 F.3d at 237.

Here, it is undisputed that Perry was stabbed multiple times before being transported to the emergency room and that his assailant reported having acted in self-defense after being

attacked with a black stick. Additionally, McKinney's sworn declaration indicates that the cell phone seized at the hospital was "covered in blood" at the time of its seizure. McKinney Decl. ¶ 4. Based on this evidence, which Perry has not refuted with any admissible evidence of his own, the court concludes that the incriminating nature of the cell phone was readily apparent as required to satisfy the third prong of the plain-view exception. See Davis, 690 F.3d at 237–38 (concluding that clothing recovered from a gunshot victim's hospital room had "an immediately apparent incriminating nature" and citing other cases where bloody clothing was seized without a warrant); Commonwealth v. Jones, 988 A.2d 649, 652, 658 (Pa. 2010) (holding that a cellular phone, which was observed to have blood on it, was properly seized under the plain-view exception during the course of a murder investigation); People v. Harlan, 8 P.3d 448, 516 (Colo. 2000) (noting that a cellular phone that "appeared to have blood on it . . . was legally seized under the plain-view doctrine").[4]

For these reasons, the court concludes that the warrantless seizure of Perry's cell phone was justified under the plain-view exception. Although the plain-view exception cannot justify the subsequent search of a cell phone, see Davis, 94 F.4th at 321, there is no evidence indicating that Perry's cell phone was actually searched by anyone at the Pulaski County Sheriff's Office, much less McKinney. Instead, the evidence indicates that Perry's phone was not searched since the Commonwealth's Attorney declined to pursue charges against Perry or the victim. Accordingly, McKinney is entitled to summary judgment on Perry's claim for alleged violations of his Fourth Amendment rights.

---

[4] In light of this ruling, the court finds it unnecessary to address whether there was also "probable cause to believe the cell phone contained evidence of criminal activity involving the 'known drug dealer' who had allegedly been attacked by Perry." Def.'s Mem. Supp. Mot. Summ. J., ECF No. 53, at 11.

## IV. Conclusion

For the reasons stated, Perry's motion for summary judgment, ECF No. 49, is **DENIED**, and McKinney's motion for summary judgment, ECF No. 52, is **GRANTED**. An appropriate order will be entered.

Entered: September 28, 2026



Michael F. Urbanski
U.S. District Judge
2026.09.28
12:26:50 -04'00'

Michael F. Urbanski
Senior United States District Judge